IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL E. KROHN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-12-249- SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Michael E. Krohn requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity.  Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied.  If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born February 28, 1968, and was forty-two years old at the time of the administrative hearing (Tr. 33). He completed the tenth grade, and has worked as a maintenance worker, truck driver, fast food manager, fast food worker, and gardener (Tr. 16, 159). The claimant alleges he has been unable to work since February 24, 2009, due to bi-polar disorder, severe depression, a neck injury, metal rods and screws in an ankle, diabetes, arthritis, obsessive compulsive disorder, and high cholesterol (Tr. 148).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on July 7, 2009. His applications were denied. ALJ John W. Belcher conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 12, 2010 (Tr. 4-18). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a narrowed range of light work, 20 C.F.R. §§ 404.1567(b), 416.967(b), *i. e.*, he could lift/carry twenty pounds

occasionally and ten pounds frequently, stand/walk six hours in an eight-hour workday, and sit eight hours in an eight-hour workday. Additionally, the ALJ found that the claimant could only occasionally climb ladders, ropes and scaffolds, crouch, bend, stoop, and reach above the head with his hands. Finally, the claimant was unable to work around unprotected heights and dangerous machinery, and could perform simple tasks and most complex work, but have only superficial contact with the general public, co-workers, and supervisors (Tr. 8). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work that he could perform in the regional and national economies, *i. e.*, packing and filling machine operator, office cleaner, and production inspector (Tr. 17).

## Review

The claimant contends that the ALJ erred, *inter alia*, by failing to perform a proper assessment of his RFC. The Court agrees, but for different reasons than those urged by the claimant, *i. e.*, the Court finds that the ALJ failed to properly analyze the claimant's mental impairments. The decision of the Commissioner should therefore be reversed and the case remanded for further analysis.

The claimant was treated for his mental health issues at Carl Albert Mental Health Center (CAMHC) from December 2005 to May 7, 2009. On his discharge summary, the claimant was given a diagnosis of depressive disorder NOS, anxiety disorder NOS, and diabetes, with a Global Assessment of Functioning (GAF) score of 59 (Tr. 281-282). The claimant was treated in Florida from July to September 2009, and was at various times assessed GAF scores of 50, 55, and 45-50 (Tr. 346, 347, 351, 366). The claimant was

involuntarily committed to the Centers, Inc., in Ocala, Florida due to his bipolar disorder (Tr. 368-380), receiving a GAF of 25 on admission, but a GAF of 52 on discharge two days later (Tr. 374, 379).  He had been in for a clinic visit the morning of his commitment and reported that he had been violent to his dog and needed to be in the hospital before he hurt somebody (Tr. 437).

In November 2009, a state agency physician reviewed the claimant's records and found that he had moderate functional limitations (restrictions of activities of daily living; difficulties in maintaining social functioning; and difficulties maintaining concentration, persistence, or pace) as well as one or two episodes of decompensation; another agency physician found the same moderate limitations but no episodes of decompensation in January 2010.  But both physicians found that the claimant was moderately limited in six areas of mental functioning (Tr. 407-423, 464-480).  The first opined that the claimant was "mentally capable of independently performing basic tasks in a low demanding work environment, that he might need a work environment with only brief interactions with others, and that he might need a work environment with few changes" (Tr. 423), while the second opined in more detail that he was capable of understanding and retaining simple (and most complex) instructions; that he had a limited ability to sustain concentration, persistence, and pace for extended periods, but should be able to complete simple tasks for 6-8 hours in an eight-hour period at an appropriate pace; and that he may show limited tolerance for frequent, recurrent contact with the general public (Tr. 480). The claimant also underwent a consultative psychological exam in January 2010.  After noting his complaints, the examiner diagnosed the claimant with bipolar disorder, most

recent episode depressed, pain disorder associated with both psychological factors and a general medical condition, personality disorder NOS, and assigned the claimant a GAF of 50 (Tr. 450-54).

Upon returning to Oklahoma, the claimant was treated at Bill Willis Community Mental Health and Substance Abuse Center (Tr. 482-516).  He was initially assessed on May 26, 2010 with a GAF of 50, and notes indicate he had been admitted for symptoms of anger, auditory hallucinations, depression, obsessive-compulsive tendencies as well as anxiety (Tr. 512, 515).  A month later, he was assessed a GAF of 50-55 (Tr. 502).

The claimant testified at the administrative hearing that he was diagnosed with bi-polar disorder and could not "deal with people" (Tr. 44).  He added that he sometimes slept for just a few hours, and that he could get really agitated very easily and quickly, blew up sometimes without thinking, and that he got "mad over the stupidest things"  (Tr. 45).  The claimant gave as an example an incident from his last job, where he "threatened to shove [his] fist down the secretary's throat" and left work to cool off at a bar, where he "picked up a metal fork, and threw it at a window that was three inches thick" (Tr. 49).

The ALJ found that the claimant had a number of severe impairments, both mental and physical, including affective mood disorder, anxiety-related disorder, and substance addiction disorder (Tr. 6).  He discussed the claimant's GAF of 59 from CAMHC and his the GAF of 50 from the consultative examiner, but made no mention of any other GAF scores in the record.  Nor did he discuss (or even mention) the involuntary commitment of the claimant in June 2009, or any of the moderate mental limitations imposed by the

state agency physicians who reviewed the claimant's medical records (Tr. 10-16). The ALJ ultimately concluded that the claimant was not disabled (Tr. 13).

As discussed above, the dispositive issue in this case is whether the ALJ properly analyzed the claimant's severe mental impairments. "When there is evidence of a mental impairment that allegedly prevents a claimant from working, the [ALJ] must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a and the Listing of Impairments and document the procedure accordingly." *Cruse v. Department of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995), *citing Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir. 1993). To apply the "psychological review technique" (PRT), the ALJ must first evaluate if the claimant has a "medically determinable mental impairment," 20 C.F.R. § 404.1520a(b)(1), then determine the degree of function he has lost by assessing his level of functioning in four specific areas. *See Cruse*, 49 F.3d at 617. The specific areas are: (i) activities of daily living; (ii) social functioning; (iii) concentration, persistence, or pace; and (iv) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(d)(2). Furthermore, the ALJ must specifically document his findings, *inter alia*, by discussing the evidence he considered in reaching his conclusions about the claimant's functionality. *See, e. g., Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) ("[T]here must be competent evidence in the record to support the conclusions recorded on the [PRT] form and the ALJ must discuss in his opinion the evidence he considered in reaching the conclusions expressed on the form."), *quoting Woody v. Secretary of Health and Human Services*, 859 F.2d 1156, 1159 (3d Cir. 1988); 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4) ("At

the administrative law judge hearing [level], the written decision must incorporate the pertinent findings and conclusions based on the technique.  The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)"); *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) (although not required to prepare the PRT form, the ALJ is "to document application of the technique in the decision."), *quoting* 20 C.F.R. §§ 1520(a)(e), 416.920(e).

In analyzing the loss of functionality suffered by the claimant in connection with his mental impairments, the ALJ found that the claimant had mild restriction in activities of daily living; mild difficulties in social functioning; mild to moderate difficulties with regard to concentration, persistence or pace; and no extended episodes of decompensation (Tr. 7).  The ALJ did not, however cite evidence supporting any of these findings.  He did not, for example, explain why he rejected the findings of the state agency physicians that the claimant's mental limitations were moderate rather than mild and that the claimant did in fact have episodes of decompensation.  *See, e. g., Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional.").  And although he did mention two of the claimant's better GAF scores, the ALJ did not mention any of the claimant's other GAF scores, including a score of 25 when he was involuntarily committed.  *See, e. g., Lee v. Barnhart,* 117 Fed. Appx. 674, 678 (10th Cir. 2004) ("A GAF score of fifty or less . . . does suggest an inability to keep a job."), *citing Oslin v. Barnhart,* 69 Fed. Appx.

942, 947 (10th Cir. 2003). *See also Givens v. Astrue*, 251 Fed. Appx. 561, 567 n.4 (10th Cir. 2007) ("[T]he Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job.  Even assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors."); *Berryhill v. Barnhart,* 64 Fed. Appx. 196, 200 (10th Cir. 2003).  Nor for that matter did the ALJ make any mention of the claimant's involuntary commitment, which would on its face seems to be a significant piece of evidence regarding the severity of any mental impairment.

A thorough analysis of the claimant's mental limitations was important in this case for two reasons.  First, a person with mild limitations and no episodes of decompensation ordinarily does not have any severe mental impairment.  *See* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities").  Second, in addition to finding that the claimant's mental impairments *were* severe, the ALJ imposed related restrictions on his ability to perform work-related activities, *i. e.*, he could perform simple tasks and most complex work, but have only superficial contact with the general public, co-workers and supervisors (Tr. 8).  Thus, in additional to citing the evidence that led him to believe that the claimant had only mild limitations and no episodes of decompensation, the ALJ should have explained why he nevertheless found her mental impairments to be severe,

and why the mental restrictions he placed upon her were appropriate for such otherwise non-severe mental impairments.

Because the ALJ failed to properly assess the claimant's severe mental impairments, the Commissioner's decision must be reversed and the case remanded for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2013.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma